Vincent and Helen Soltis et al., Appellants *v.* A. R. Tasir et al., Appellees.

Argued October 5, 1983, before Judges ROGERS, BARRY and BARBIERI, sitting as a panel of three.

552

*Gordon David Fisher,* with him *Darlene M. Nowak, Titus, Marcus & Shapira,* for appellants.

*Joel P. Aaronson, Baskin and Sears, P.C.,* for appellees.

OPINION BY JUDGE BARBIERI, January 13, 1984:

Appellants, residents in the immediate vicinity of property owned by the appellees, A. R. Tasir and Joyce Wahlah, appeal from an order of the Court of Common Pleas of Allegheny County which affirmed a decision of the Zoning Board of Adjustment (Board) of the City of Pittsburgh (City), granting the appellees' request for a special exception[1] to enlarge and rehabilitate their nonconforming structure. We reverse.

---

[1] While both the appellants and appellees have formulated their "Statement of the Questions Involved" in this appeal in terms of the Board's actions in approving a request for a variance and special exception, our review of the record in this case, and of the arguments presented in both parties' briefs, unequivocally establishes that what is at issue in the present proceeding is whether or not the Board properly granted a special exception to the appellees.

The appellees are owners of property located in an area of the city zoned as a "R-2 Two Family Residence District," permitting one or two family dwellings.[2] The subject property is a three story brick residential structure whose history predates the City's original zoning ordinance, passed in 1923, when the property was used as a private hospital/sanitarium, a use continued until 1936, when the then owners of the property requested from the Board permission to convert the use of their property to that of a six family dwelling unit. The Board granted this request, noting that the City's zoning ordinance provided at that time that a nonconforming use could be changed to another nonconforming use of the same or higher classification as a matter of right, without Board approval. It is undisputed that the use of the subject property as a hospital/sanitarium and as a six family unit, constituted a valid nonconforming use until 1936.

Subsequent to the owners' request in 1936, later that same year, the owners requested from the Board that they be given permission to convert their property to that of a conforming use, a two family dwelling. This request was granted by the Board, although the Board found in the present proceedings, that the appellees' property was never used as a two family dwelling, but rather continued as a six family unit. The Board also found that by 1950, four rooming quarters had been installed in the subject property, which under the City's ordinance at that time, were permitted as of right in a six family unit.

In November 1981, the appellees applied to the Board for a special exception to enlarge and rehabili-

---

[2] The area in which the appellees' property is located was originally zoned in 1923 as a "B Residence District" which like the present classification, established in 1958, permitted one or two family dwellings.

tate their structure pursuant to Section 909.06(b)(17) of the City's ordinance, which permits by way of a special exception, the enlargement and/or rehabilitation of a nonconforming structure or nonconforming use. Specifically, the appellees sought to:

1. Erect a one-story extension to the front of the existing building,

2. Erect a two-story extension to the rear of the existing building,

3. Occupy the structure as a ten unit multiple family dwelling with ten parking stalls,[3]

4. Reduce the front yard requirement from 30' to 19.25',

5. Reduce the rear yard requirement from 30' to 20', and to

6. Reduce one side yard requirement from 15' to 6.27'.

The Board granted the appellees' request,[4] noting that a conversion to ten full units would not be more intensive than the existing use. The appellants, residents in the immediate vicinity of the appellees' property, appealed this decision to the court of common pleas, which affirmed the Board's decision, and the present appeal followed.

---

[3] In the appellees' original request to the Board, they sought permission to occupy the subject premises as an eleven unit multiple family dwelling with eleven parking stalls. In a letter dated, December 16, 1981, the appellees amended their request to seek approval only for ten units and ten parking stalls. It was the appellees' belief that their entitlement to ten units was clear and would therefore simplify matters.

[4] Each of the three members of the Board filed an adjudication in this matter. Two members who granted the appellees' request, and whose decisions became the decision of the Board, and which is therefore, the subject of the present appeal, both noted that the permission granted in 1936 to convert to a two family dwelling had never been exercised, but that the unit had been continued as a multi-family facility.

Our scope of review where, as in the present case, no additional evidence was received by the trial court, is to determine whether the zoning board committed an abuse of discretion, or an error of law. *Smith v. Board of Zoning Appeals of the City of Scranton*, 74 Pa. Commonwealth Ct. 405, 459 A.2d 1350 (1983).

While the appellants do not dispute the fact that the use of the appellees' property was a valid nonconforming use from 1923 until 1936, it is the appellants' position that the present owners were not entitled to a special exception under Section 909.06(b)(17) of the City's ordinance since the Board's second decision in 1936, approving a conforming use for the structure, operated as an abandonment of the nonconforming six family use.

In *Marchese v. Norristown Borough Zoning Board of Adjustment*, 2 Pa. Commonwealth Ct. 84, 277 A.2d 176 (1971), we stated that

[t]he abandonment of a nonconforming use and the consequent termination of any legal rights thereto results from a concurrence of facts, circumstances, and the intention of the owner of the premises or other person entitled to the use. Intention with respect to the abandonment of a nonconforming use is to be ascertained from overt acts, a failure to act, as well as from statements.

*Id.* at 95, 277 A.2d at 183. *See also Schaefer v. Zoning Board of Adjustment of the City of Pittsburgh*, 62 Pa. Commonwealth Ct. 104, 435 A.2d 289 (1982). Applying *Marchese* to the present case, we cannot accept the appellants' position that the nonconforming use of the subject property was abandoned by virtue of the Board's decision in 1936 approving a conforming use for the subject property, where no evidence was introduced and accepted by the Board to show

that a conforming use was ever actually put into effect. Rather, the facts, circumstances, and actions in this case, as found by the Board and supported by substantial evidence, establish that the appellees' property has been continuously used as a nonconforming use from 1936 until the present. As such, the appellees were entitled to apply for a special exception pursuant to Section 909.06(b)(17) of the City's ordinance.

Our dismissal of the appellants' first contention does not, however, determine whether or not the Board correctly granted the appellees' request for a special exception. In this regard, the appellants argue that the proposed enlargement and rehabilitation of the appellees' structure does not meet all the necessary requisites under Section 909.06(b)(17) for the granting of a special exception. We agree.

Section 909.06(b)(17) provides in pertinent part as follows:

> C. In addition to the provision of Section 985.04, the proposed enlargement shall comply with all provisions including height, applicable to a similar conforming structure, *and in no case shall there be a greater height or provision of less yard space for the enlarged portion than required for a conforming structure in the applicable district;* (Emphasis added.)

Additionally, in the "R-2" district, wherein the appellees' property is located, Section 931.04 of the City's ordinance, pertaining to area requirements, provides in part that:

> For the uses listed in Section 931.02 . . . there shall be provided and maintained a lot area, yards and other open spaces not less than prescribed in this section.
>
> . . . .

| | |
|---|---|
| Front yard depth | 30 feet |
| Rear yard depth | 30 feet |
| Side yard width; each of two required Two-family dwelling | 30 feet abutting a street; 10 feet when not abutting a street. |
| One-family dwelling not exceeding 1-1/2 stories or 20 feet in height | 30 feet abutting a street; 5 feet when not abutting a street. |
| One-family dwelling exceeding 1-1/2 stories or 20 feet in height | On corner lot, 30 feet abutting a street; 5 feet when not abutting a street. On interior lot, 10 feet on one side, 5 feet on other side. (See Section 993.03(a)(11).) |
| Other than a one-family dwelling or a two-family dwelling | 30 feet abutting a street and 20 feet when not abutting a street. |

While Section 909.06(b)(17) governs the special exception sought by the appellees in this case, the explicit language of this section makes clear that the yard requirements attendant to a nonconforming structure must satisfy the yard requirements for *conforming* structures in the district wherein the nonconforming structure is located; that being the ''R-2'' district in this case. In examining what the appellees sought to do in the instant case, as discussed earlier against the above criteria, it becomes apparent that the appellees' proposed enlargement and rehabilitation of their structure does not meet the front, rear, and side yard requirements mandated by Section 931.04 for conforming structures in the ''R-2'' dis-

558

trict. Accordingly, the appellees' request for a special exception should have been denied, and the decision of the court of common pleas affirming the Board's decision must be reversed.

ORDER

AND Now, this 13th day of January, 1984, the order of the Court of Common Pleas of Allegheny County dated, September 9, 1982, is hereby reversed.