**James E. FINEGAN and Colette Finegan, h/w, Appellants,**

v.

**The BOARD OF SUPERVISORS OF EARL TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued March 4, 2003.

Decided June 18, 2003.

---

Jeffrey C. Karver, Boyertown, for appellants.

Terry L. Parish, Reading, for appellee.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Appellants James E. and Colette Finegan, husband and wife (collectively, Finegan), appeal from an order of the Court of Common Pleas of Berks County (Trial Court) which denied Finegan's land use appeal from an order of Appellee Board of Supervisors of Earl Township (Board). The Board's order and decision denied Finegan's application for a conditional use.

Finegan is the record owner of approximately 0.783 acres of land located in Earl Township (Township). Finegan's property (Property) is located in a Woodland–Agricultural–Conservation Zoning District that was established as a result of the Township's first enacted Zoning Ordinance (Ordinance) in 1972. Finegan's Property, and the structure thereon, however, have been operating as a restaurant and bar since the mid–1950's, and as such, represent a pre-existing nonconforming use. Finegan has been the owner of the Property since 1989.

In 1990, without obtaining a permit from the Township Zoning Officer, Finegan established an outdoor dining area outside of

the rear of the structure on the Property by adding 14 tables, accompanying chairs, a barbeque pit, and a bar. The Zoning Officer thereafter served a written enforcement notice upon Finegan advising them of a violation of the Ordinance as a result of the addition of the outdoor area. In response Finegan filed an application with the Township Zoning Hearing Board seeking a determination as to whether there had been prior use of the outside area of the Property predating the Ordinance's adoption, which would therefore make Finegan's outside area itself a preexisting nonconforming use. By written decision dated August 16, 1990, the Zoning Hearing Board declined to find any such use predating the Ordinance's adoption, but nevertheless granted Finegan's request for a special exception to allow them to continue using the 14 tables and supporting features for outdoor dining. No appeal was taken from that decision.

In the spring of 1999, Finegan added 30 more tables and accompanying chairs to the outdoor area, again without obtaining a permit therefor from the Zoning Officer, bringing the Property's total outdoor seating capacity and area over and above that permitted under the 1990 decision of the Zoning Hearing Board. On May 3, 2001, the Zoning Officer served an enforcement notice upon Finegan advising them that they were in violation of the 1990 decision and order.

Finegan timely appealed the enforcement notice, and further filed an application for a variance with the Zoning Hearing Board. Although Finegan's brief to this Court states that the Zoning Hearing Board heard Finegan's enforcement notice

appeal and variance application, neither the disposition thereof, nor the decisions of the Zoning Hearing Board thereon, are part of the record to the instant appeal. Those matters are not before this Court in this appeal.

Following the Zoning Officer's May 3, 2001, service of the enforcement notice, Finegan also timely filed an Application for Approval of a Conditional Use (Application),[1] pursuant to Section 1406(A) of the Ordinance, with the Board.

Following a hearing, the Board denied Finegan's Application. Finegan timely appealed that denial to the Trial Court, which, after hearing oral argument from the parties, affirmed the Board's decision. Finegan now appeals to this Court from the Trial Court's order.

Where the trial court has taken no additional evidence, Commonwealth Court's scope of review of a conditional use zoning appeal is limited to determining whether the township board of supervisors committed an error of law or a manifest abuse of discretion. *South Whitford Associates, Inc. v. Zoning Hearing Board of West Whiteland Township*, 157 Pa. Cmwlth. 387, 630 A.2d 903 (1993), *petition for allowance of appeal denied*, 538 Pa. 652, 647 A.2d 905 (1994).

A nonconforming use is any use, structure, or combination thereof which came into existence prior to an otherwise applicable zoning restriction, but which now violates that restriction. Original Record, Earl Township Zoning Ordinance of 2000, at 25; *Township of Haverford v. Spica*, 16 Pa.Cmwlth. 326, 328 A.2d 878 (1974). Under the doctrine of natural ex-

---

1. We note that the Ordinance specifies that the procedure by which to expand a nonconforming use of land, or of land and structures combined, is by application for a conditional use. Original Record, Earl Township Zoning Ordinance of 2000, at 139, 140. However, Section 403 of the Ordinance, which enumerates permitted conditional uses, does not provide for a restaurant and/or bar use such as that at issue *sub judice*. *Id.* at 36.

pansion, a nonconforming use may be extended in scope as the business increases in magnitude, over ground previously occupied by the owner for that business at the time of the enactment of the applicable zoning ordinance. *Appeal of Lester M. Prange, Inc.*, 166 Pa.Cmwlth. 626, 647 A.2d 279 (1994). The right to expand a nonconforming use, however, is not unrestricted and remains subject to any applicable zoning regulations and may not be detrimental to public health, safety, or welfare. *Hitz v. Zoning Hearing Board of South Annville Township*, 734 A.2d 60 (1999), *petition for allowance of appeal denied*, 562 Pa. 676, 753 A.2d 821 (2000). Nonconforming uses which are dimensional nonconformities have no natural expansion right. *Rennerdale Volunteer Fire Dept. v. Zoning Hearing Board of Collier Township*, 90 Pa.Cmwlth. 635, 496 A.2d 431 (1985).

Finegan presents two issues for our review.[2] First, Finegan argues that the outside seating area which was established pursuant to special exception under the Zoning Hearing Board's 1990 decision is itself a nonconforming use of land. Secondly, Finegan argues that the Trial Court erred in failing to conclude that the use of the restaurant's parking areas, which predates the Ordinance's enactment, and Section 1406(A) of the Ordinance, mandate that those parking areas themselves be considered as included in the pre-existing nonconforming use of land for purposes of natural expansion.

▮ In 1990, Finegan was granted a special exception by the Zoning Hearing Board to expand the restaurant use to include an outdoor dining area measuring approximately 30′ × 45′. The Ordinance in effect at that time[3] permitted expansion of

a nonconforming use by special exception under certain requirements, which represented the sole limit on expansion at that time. Reproduced Record (R.R.) at 19a, 23a. The 1990 decision of the Zoning Hearing Board specifically found, and then concluded as a matter of law:

[Finding of Fact] 23. Pursuant to section 709.1(a)(bb), a non-conforming use may be expanded by special exception provided that an expansion of land use within the existing plot shall be permitted if all yard and open space requirements are met. The proposed outdoor seating area would be an expansion of a non-conforming use, and it would seem that the yard and open space requirements would be met for such an expanded use.

\* \* \*

[Conclusion of Law] 7. The expansion of the outdoor seating area to the rear of the Tiki Bar would be considered as an expansion of a non-conforming use and would be permitted by special exception pursuant to Section 709.1(a)(bb) of the Earl Township Zoning Ordinance.

\* \* \*

[Conclusion of Law] 14. [Finegan], pursuant to Section 709.1(a)(bb) and Section 908.4 of the Earl Township Zoning Ordinance, is herein granted the special exception to permit the proposed expansion of the outdoor seating area of the Tiki Bar ...

R.R. at 19a, 23a, 24a. Finegan now argues, without citation to any authority, that the special exception is merely a procedural device to impose standards whereby the Zoning Hearing Board may approve or deny a request to expand a nonconform-

---

2. Finegan's issues have been reordered in the interest of clarity.

3. The Ordinance was subsequently amended and readopted in 1996.

ing use or to change it to another nonconforming use. Finegan asserts that the nature of the expanded or changed use remains the same—it remains nonconforming. In short, Finegan argues that the previously permitted expansion itself is now a nonconforming use. We disagree.

There exists no precedent in our caselaw for the proposition that an expansion of a nonconforming use converts the expansion itself into a nonconforming use. In the instant matter, the expansion granted by the Zoning Hearing Board is exactly what it is purported to be by the express words of that decision: "an *expansion* of a nonconforming use ... permitted by special exception". *Id.* at 23a (emphasis provided). To hold that the prior expansion was anything other than an expansion of a nonconforming use permitted by special exception would not only run counter to the express language of the Zoning Hearing Board's 1990 opinion, but would also contradict the very definition of a nonconforming use under both the Ordinance and our long standing precedents, and would further potentially eviscerate the sections of the Ordinance restricting the expansion of nonconforming uses.

This Court has defined a nonconforming use as follows:

"A nonconforming use requires that the use in question predate the relevant zoning restriction ... A nonconforming use is any activity or structure which came into existence prior to the Zoning restriction involved, but which now violates that restriction"

*Township of Haverford,* 328 A.2d at 881 (citation omitted). In Section 302 of the Ordinance, the following definition appears:

"Nonconformity. A use, lot, or structure, lawfully existing prior to the enactment

of this Ordinance or any subsequent amendment to it, that does not meet the applicable provisions or requirements of the zoning district in which it is located, either at the time of enactment of this Ordinance or as a result of subsequent amendment to it."

Original Record, Earl Township Zoning Ordinance of 2000, at 25.

Unarguably, the use of the outdoor area on the Property did not exist when the Ordinance was first adopted in 1972. As noted by the Trial Court, that outdoor area lawfully came into existence only as a result of the August 16, 1990 adjudication of the Zoning Hearing Board which granted a special exception for the expansion of Finegan's pre-existing nonconforming use. That 1990 decision further expressly held that there had been no prior restaurant use of the area to the rear of the building.[4] Since it did not exist prior to the adoption of the Ordinance in 1972, the use of the outdoor seating area cannot be a nonconforming use by definition and must be considered, simply, an *expansion* of a nonconforming use granted by special exception.

Additionally, if we were to accept Finegan's argument that the prior grant of an expansion of the nonconforming use converted that expansion itself into a nonconforming use, then the limitations placed on the expansion of non-conforming uses by the Ordinance would be eviscerated, rendered surplusage, and produce an absurd result. Sections 1404(C) and 1406(A) of the Ordinance permit the expansion of nonconforming uses by a maximum of 25% of the area of the use at the time it became nonconforming. If Finegan's argument on this point were to be accepted, the conversion of an expanded area into a nonconforming use itself would result in the po-

---

4. Finding of Fact 18, R.R. at 18a.

tential for limitless successive expansion, with each subsequent expansion measuring the allowable 25% expansion area against a nonconforming use that continues to grow with each granted expansion. The practical result would be that no limit would exist on the expansion of a nonconforming use, with the sole exception of the slow but steady increase of the use as each subsequent expansion is added to the nonconforming use's total. Such an absurd result would render the expansion provisions of the Ordinance as mere surplusage, and would eviscerate the very purpose of those Sections. In ascertaining the intention of a law-making body, we presume that the law-making body did not intend a result that is absurd. *Appeal of Dillon Real Estate Co., Inc.*, 688 A.2d 1264 (Pa. Cmwlth.1997); Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1). Therefore, Finegan's argument on this point must fail.

Alternatively, Finegan argues that an expansion of his nonconforming use is governed by Section 1406(A) of the Ordinance, which reads in relevant part:

A nonconforming use consisting of land and structures in combination shall be permitted to expand, by conditional use application, to an area not to exceed 25 percent of the land area occupied by the use and 25 percent of the floor area footprint of the structure containing the use at the time it became nonconforming. Such expansion shall be calculated for land utilized by the use, such as parking areas, and floor area footprints

of structures clearly accessory to the use.

Original Record, Earl Township Zoning Ordinance of 2000, at 138. Finegan argues that the total area of his pre-existing nonconforming restaurant/bar use, when combined with the parking areas in use prior to the adoption of the Ordinance, yield an area of 25% potential expansion under Section 1406(A) that his outdoor area falls within.[5]

■ In their respective opinions, neither the Trial Court nor the Board directly addressed Finegan's argument that the parking areas should be included in any calculation as to the allowable area for natural expansion of the original nonconforming restaurant/bar use at issue. Instead, both tribunals focused solely on Finegan's alternate argument that the previously existing outdoor area itself was a nonconforming use. However, in its address of whether or not Section 1406(A) of the Ordinance controlled Finegan's request for expansion, the Board wrote:

[T]he Board is not convinced that [Finegan] has demonstrated "a nonconforming use consisting of land and structures in combination". The Board accepts as true the prior findings of the Zoning Hearing Board that the restaurant/tavern use of the building on the premises is a pre-existing nonconforming use, having been established prior to the effective date of the first Zoning Ordinance in 1972.

R.R. at 41a–42a. The Board subsequently concluded:

5. The Board, in its brief to this Court, argues that Finegan's assertion that the parking area is itself a separate nonconforming use is raised here on appeal for the first time, and is therefore waived. We can find no assertion, implied or express, within Finegan's argument characterizing the parking area as a separate nonconforming use. The issue of the parking area's inclusion in the nonconform-

ing restaurant/bar use, for purposes of calculating the allowable 25% expansion pursuant to the Ordinance, has been preserved on appeal to the Trial Court in Finegan's Land Use Appeal, and to this Court in Finegan's Concise Statement of Matters Complained of on Appeal. R.R. at 48a, 65a. The Board's waiver argument is therefore without merit.

9. Although the building on the premises and a portion of the land, as allowed in 1990 by the Zoning Hearing Board, is used conjunctively for the operation of the restaurant/tavern business, that does not constitute the nonconforming use of land and structures in combination, since the use of the land, in this situation, is by special exception and not as a nonconformity.

10. [Finegan has] not, therefore, brought themselves within the purview of Section 1406(A), upon which they base their application for special exception [sic].

* * *

16. The doctrine of natural expansion of nonconforming uses does not apply to [Finegan's] land or the use thereof, under the circumstances of this case.

R.R. at 45a–46a. While the Board is correct that the prior outside seating area is not a nonconforming use itself, and that therefore no right of natural expansion flows from that outdoor area, we disagree that Finegan's pre-existing nonconforming use does not fall under the purview of Section 1406(A), and is not entitled to a right of natural expansion thereunder.

It is clear from the undisputed facts of this case, as well as from the prior Zoning Hearing Board decisions and the Board's decision in the instant matter, that "[a] restaurant and bar use on the subject property has been in existence since the 1950's and therefore **the said use is a valid, nonconforming use on the lot**".[6] R.R. at 30a (emphasis provided). While

the prior decisions of the Zoning Hearing Board, which were never appealed, are binding on these subsequent proceedings to some extent, they are not binding on the issue of any right of expansion that flows from Finegan's nonconforming use under the current Ordinance, as the Section 1406(A)'s provisions were not in effect during those prior proceedings.

The Ordinance classifies nonconformities into three express categories. Section 1404 addresses nonconforming uses of land alone. Given Finegan's undisputed use of the structure on the Property for his nonconforming restaurant/bar use, this section clearly is inapplicable to the instant facts. Section 1405 addresses nonconforming structures, but does not address uses of any kind. Again, the matter *sub judice* centers solely around Finegan's undisputed nonconforming restaurant/bar *use*, and the provisions of Section 1405, in their sole address of physical structures and not uses, is equally inapplicable.[7] It is further undisputed that Finegan seeks no expansion of the structure itself, and Section 1405 therefore is irrelevant to the instant matter.

Section 1406, however, deals with the nonconforming use of land and structures in combination. While we acknowledge the 1990 Zoning Hearing Board finding that Finegan's *use* was confined to the actual structure for purposes of characterizing Finegan's first outdoor seating area, we disagree with the Trial Court and the Board that the limitation of Finegan's nonconforming *use* to the dimensions of the structure remove his use from the purview of Section 1406. Clearly, under the ex-

---

6. We emphasize again that the prior outdoor seating area is not the use at issue for purposes of expansion under the Ordinance. It is the nonconforming restaurant/bar use that must be classified under the Ordinance, and it is the restaurant/bar use that may be entitled to natural expansion under the Ordinance.

7. The structure housing Finegan's nonconforming use on the Property has been found previously to be a nonconforming structure. R.R. at 4a.

press words of the Ordinance, Section 1406 is the sole nonconforming use category that applies to Finegan's use. While the dimension of Finegan's use may have been found to have been limited to the dimensions of the structure on the Property for purposes of the prior proceedings, it is undeniable that Finegan's nonconforming restaurant/bar use consists of a use of the structure and of the land on which that structure sits. This simple application of logic is buttressed by the fact that the Ordinance is without any provisions addressing a nonconforming use that does not also include a use of land. Under the plain language of the Ordinance, Section 1406 is the sole nonconforming use category under which Finegan's use must fall.[8]

As distinguished from the prior Zoning Hearing Board proceedings on Finegan's first outdoor seating area, the provisions of the subsequently amended Ordinance—namely Section 1406—control any right that Finegan may have to expand his nonconforming restaurant/bar use. Section 1406 permits the expansion of nonconforming uses consisting of land and structures in combination "to an area not to exceed 25 percent of the land area occupied by the use and 25 percent of the floor area footprint of the structure containing the use at the time it became nonconforming. **Such expansion shall be calculated for land utilized by the use, such as parking areas, and floor area footprints of structures clearly accessory to the use.**" (emphasis supplied). As such, Finegan is entitled to expand his nonconform-

ing restaurant/bar use under such a calculation. Although Finegan has entered into the record the square footage of an area that they allege constitutes the parking area to be included for expansion calculations, the record is bereft of any evidence as to what that square footage was at the time Finegan's use became nonconforming. The measurement of that area at the time Finegan's use became nonconforming—namely, before the enactment of the first Ordinance in 1972—is the applicable area figure to be included in the calculation of Finegan's permissible expansion, and not the present or recent past parking area. As such, the instant matter requires a remand to the Trial Court for further remand to the Board for findings on those facts.

Finally, we note that under Section 1406 Finegan is entitled to a *maximum* expansion of his nonconforming use of 25% of the area enumerated therein as it existed at the time Finegan's use became nonconforming. Since Finegan has previously been granted an expansion of his use, in the 1990 decision of the Zoning Hearing Board, the area of that prior outdoor seating expansion must be subtracted from the total 25% expansion area permitted under Section 1406. Any remainder of that 25% area, if any such remainder exists, constitutes the remaining area into which Finegan is entitled to expand his current outdoor seating expansion.

Accordingly, pursuant to the foregoing opinion, the order of the Trial Court is reversed, and this matter is remanded

---

8. We emphasize that Finegan's nonconforming use must fall under one of the categories enumerated in the Ordinance. It is exclusively these three categories that define the rights of natural expansion to the holders of nonconforming uses within Earl Township, and to deprive a holder of a nonconforming use of any right to natural expansion has been held to be patently unconstitutional. *Jenkintown*

*Towing Service v. Zoning Hearing Board of Upper Moreland Township,* 67 Pa.Cmwlth. 183, 446 A.2d 716 (1982) (the right to expand a nonconforming use, although not unlimited, is a constitutional right protected by the due process clause, and a municipality cannot prohibit *per se* the natural expansion thereof) (citations omitted).

with instructions for further remand to the Board for findings on the calculation of the land utilized by Finegan's nonconforming use, such as parking areas, and floor area footprints of structures clearly accessory to the use, at the time that said use became nonconforming, with allowances subtracted for the previously granted natural expansion of the use under the 1990 decision of the Zoning Hearing Board.

### ORDER

AND NOW, this 18th day of June, 2003, the order of the Court of Common Pleas of Berks County dated June 18, 2002, at No. 01–8614, is reversed, and this matter is remanded with instructions for further remand to the Board of Supervisors of Earl Township, for findings on the calculation of the land utilized by Finegan's nonconforming use, such as parking areas, and floor area footprints of structures clearly accessory to the use, at the time that said use became nonconforming, with allowances subtracted for the previously granted natural expansion of the use under the 1990 decision of the Zoning Hearing Board, pursuant to the foregoing opinion.

Jurisdiction relinquished.